EASTERBROOK, Circuit Judge.
Rats. This case is about rats. Giant, inflatable rats, which unions use to demonstrate their unhappiness with employers that do not pay union-scale wages. Cats too — inflatable fat cats, wearing business suits and pinkie rings, strangling workers. Here is what they look like, as deployed during a labor dispute in the Town of Grand Chute, Wisconsin:
*746 [[Image here]]
*747 [[Image here]]
As the pictures show, the rat and the cat are staked to the ground, to prevent the wind from blowing them away. Those stakes led to this litigation.
Grand Chute forbids private signs on the public way. Municipal Code § 535-106C. Another section defines signs to mean “[a]ny structure, part thereof, or device attached thereto” that conveys a message. Municipal Code § 535-105. Picket signs and sandwich boards are lawful under this definition, and the Town did not interfere with the Union’s use of them. But the Union inflated its rat and cat in the median of a highway, and because they were staked to the ground the Town treated them as structures.
If picketers had held them down by ropes, there would not have been a problem under the Town’s rules. Likewise if they had been inflated with helium and floated six inches above the ground. The Town suggested that the protesters mount the cat and rat on a flatbed truck, which would not be a structure; the Union declined. Staked to the ground on the public way, as they were, they were forbidden. The Union removed them when directed to do so and filed this suit under 42 U.S.C. § 1983, contending that the local ordinance violates the Constitution’s First Amendment, applied to the states through the Fourteenth.
The district court denied the Union’s motion for a preliminary injunction, 2014 WL 1689720, 2014 U.S. -Dist. Lexis 59340 (E.D. Wis. Apr. 29, 2014), and about a year later entered summary judgment for the Town. The Union has appealed from the second order only.
*748 Unfortunately, neither the district court nor the parties considered the possibility that this case may be moot. By the time the court entered summary judgment, the construction project that led to the use of demonstrative rats and cats had been completed, and the Union was no longer picketing. It has not asked for an award of damages, which led us to wonder whether we have a live controversy. At oral argument counsel for the Union said yes, because a dispute might crop up again if the Union decides to demonstrate against a future construction project in Grand Chute. Yet for a case to remain live because it is capable of repetition, there must be “a reasonable expectation that the same complaining party would be subjected to the same action again.” Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The record does not contain any information about this likelihood. How many construction projects built with non-union labor have caused labor disputes in Grand Chute? Are more such projects planned? And even if such a project is built, and a dispute recurs, this suit may still be moot if the controversy about that future project would not evade review. Labor disputes often are short-term affairs, but many are long lived. Even for short-term disputes, the possibility of damages keeps a ease alive.
And there is one more problem: between the district court’s order denying interlocutory relief and its order granting summary judgment, the Town amended its code (see Ordinance 2015-01) and changed the definition of a sign. The citations in this opinion are to pre-amendment language and numbering. None of the parties alerted us (or the district court) to this fact, which potentially affects the proper disposition if the controversy remains live.
We cannot decide this suit on the merits without being confident that we have a justiciable controversy. The district court needs to take another look at it. If the Union persists in abjuring damages, the district court must determine whether the probability of a fresh dispute between this union and Grand Chute is high enough— and the risk that it would be over too quickly to allow judicial review also high enough — to satisfy the “capable of repetition yet evading review” proviso to the mootness doctrine. Then it must address the validity of the Town’s current ordinances, rather than one that was changed before the entry of final judgment.
Although we cannot resolve the merits while the presence of a justiciable controversy is in doubt, we can say a few words about other issues that the district court needs to consider if the controversy remains live.
Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (Í984), holds that a city may ban all private signs (including political ones) from the public way. Grand Chute has done just that — on paper. That the city allows its own signs (e.g., “No Left Turn”) does not require it to allow private structures on public property, whether or not the private structure is designed to convey a message. See, e.g., Pleasant Grove v. Summum, 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009).
The Union, cannot avoid Taxpayers for Vincent by observing that the rat and cat are symbolic speech, because Clark v. Community for Creative Non-Violence, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), holds that a public body may forbid the “action” component of symbolic speech, provided that it does not discriminate against disfavored viewpoints. In Community for Creative Nom-Violence the National Park Service forbade all tents on the Mall in Washington, D.C., and the Court held that this was valid even though *749 a group wanted to camp out to make a political point.
The ordinances in Grand Chute are comprehensive and content-neutral, and decisions such as Community for Creative Non-Violence and Taxpayers for Vincent hold that a governmental body need not make ad hoc exceptions to such rules. To the contrary, limiting official discretion about who is entitled to speak is a vital goal of the Supreme Court’s jurisprudence under the First Amendment. See Forsyth County v. Nationalist Movement, 505 U.S. 123, 130-31, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951). The sort of ad hoc exception that the Union wanted Grand Chute to make (on the ground that the rat and cat did not jeopardize traffic safety and were only temporary) not only would have transgressed the rule against open-ended discretion but also would have created a form of content discrimination. See United States v. Stevens, 559 U.S. 460, 470-71, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010); Houston v. Hill, 482 U.S. 451, 465-67, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). That in turn would have called into question the Town’s entitlement to enforce its ordinance against anyone. See, e.g., Reed v. Gilbert, — U.S.-, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015).
The Union maintains, however, that the Town has undercut its own ordinance by selective enforcement, permitting messages of which it approves while enforcing the ordinance against unions and other unpopular speakers. If the ordinance in operation discriminates according to the content of speech, then only a compelling justification could save it, and the Town has not argued that it has the sort of justification that would authorize content discrimination.
The district court’s opinion denying the Union’s motion for a preliminary injunction did not address in any detail how the ordinance is being administered. The opinion granting summary judgment for the Town took up that topic but did not resolve it.
The Union pointed to a number of message-bearing structures that it believes violate the ordinance. The Town replied that some of these are outside its borders and that others are not on the public way. Instead of deciding who is right, the district court wrote: “Even assuming these signs did violate the ordinance ... they do not prove the Town’s enforcement against the rat was arbitrary, and we cannot infer from evidence of non-enforcement that an actual enforcement was for an invidious reason.” That would have been an appropriate response if this were, say, a dispute about zoning variances. But it is not an adequate answer to a contention that a unit of government has allowed some speech and stifled other speech, choosing which ideas can be conveyed. Reed tells us that content discrimination is almost always forbidden. If this suit is live, the Union’s claim of content discrimination cannot be dismissed on the ground that the Town lacks an “invidious reason” for preferring some speech over other speech.
The Union also pointed to a number of signs posted on or near the Town’s fire stations. The district court thought these irrelevant for two reasons: first, “the signs at issue belonged to the Town’s own employees”; second, one of the Town’s managers testified that a particular sign at a fire station “could be legal” because it may not have been a structure. Once again, neither of these responses is satisfactory in a suit that presents a claim of content discrimination. Summum and similar decisions hold that a public body may engage in speech on its own behalf without offerT ing private citizens equal access to public property. But Summum does not hold that *750 a unit of government may favor speech by its workers over speech by other persons. That would be clear enough if the fire department’s workers had posted signs boosting the Mayor’s re-election or condemning labor unions, while the Town resolutely blocked opposing perspectives on the public way. As for “it could be legal”: the district judge needs to determine whether the signs were (or are) legal under the ordinance. If the Town is distinguishing among speakers covered by the ordinance, it must meet the Supreme Court’s standards for content discrimination. That the'Town’s police did not tell the Union to remove the rat and cat until the target of the Union’s campaign complained offers further support for the Union’s contention that enforcement depends on speakers’ messages. (The rat and cat were easily visible to the police, who ignored them for two days until the complaint was made.)
Finally, the Union contends that the Town has allowed other speakers 30 days to remove structures that violate the ordinance, while it insisted that the Union remove the rat and cat immediately. Yet again the district judge did not decide whether this contention is true. The Union put in the record some printed notices that the Town has used, and these notices indeed say: “All cited violations shall be corrected within 30 days after written notification”. One notice has a handwritten addition changing 30 days to 48 hours, but others left the form as is. A Town employee testified that the printed notice is wrong and that there is no 30-day grace period. It may be, as the Town contends, that allowing such a delay would undermine the ordinance unduly. Still, if the Town does allow other speakers more time than it allowed the Union, it has engaged in content discrimination. The district court needs to make findings about the Town’s actual enforcement practices — unless this controversy is moot.
We trust that, if this suit still presents a live controversy, the district judge will proceed with dispatch appropriate to the nature of the constitutional claim. We are prepared to give any appeal the same treatment.
The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.